In re GUARDIAN BUILDING & LOAN ASS'N (MOTT, Corporation Com'r, Intervener).

No. 16266.

District Court, D. Oregon.

Oct. 2, 1931.

John W. Kaste, of Portland, Or., for alleged bankrupt.

Wm. B. Layton and N. Ray Alber, both of Portland, Or., for petitioning creditors.

Barnett H. Goldstein, of Portland, Or., for intervener.

McNARY, District Judge.

The association has an authorized capital stock of 100,000 shares, divided into 99,750 shares of contributing dividend stock (the owners of which are hereafter called shareholders), and 250 shares of noncontributing reserve-fund stock. The membership consists of 21,000 shareholders, who have paid in to the association the sum of $1,131,720.

On the 2d day of June, 1931, the circuit court of the state of Oregon for Multnomah county appointed a receiver of the assets of the association, and on the 23d day of the same month said court vacated the order of appointment upon the ground that it was made without cause.

On June 23, 1931, the corporation commissioner of the state of Oregon, acting in pursuance of statutory authority, took possession of the assets of the association for the purpose of liquidation.

On July 2, 1931, three general creditors filed a petition in this court praying that the association be adjudged a bankrupt, and alleging that it, while insolvent, had committed acts of bankruptcy by transferring property to creditors with intent to prefer such creditors, and by suffering a receiver to be appointed as herein stated.

The association, acting through its board of directors, with the approval of a majority of the reserve stockholders, filed an answer confessing the allegations of the petition and asking that it be adjudged a bankrupt.

On the 9th day of July, 1931, the corporation commissioner, by leave of this court, intervened and filed a motion, which is now before the court for consideration, to strike the petition upon the ground that it does not state facts sufficient to warrant the relief prayed for.

It has been stipulated that the court, in passing upon the motion, shall determine whether the shareholders are creditors of the association having provable claims in bankruptcy; and further stipulated that, if they are not such creditors, the association is not insolvent.

Under the laws of this state, the powers, privileges, and liabilities of a shareholder of an association are comparable to those of stockholders in other business corporations. The distinguishing features are that a shareholder has the right of withdrawal upon condition, and the right to return of his payments with profits upon maturity of his stock.

■ From the time a person becomes a shareholder in an association, he is its debtor, and is liable to the full extent of his unpaid stock subscription, and upon its dissolution he is a distributee. The statute (Or. Code 1930, § 25-301 et seq.), considered in its entirety, creates this relation, notwithstanding the declaration therein that the money paid by shareholders "shall be regarded as deposits."

Western Bond & Mortgage Co. v. W. E. Crews, Corporation Commissioner, 112 Or. 663, 231 P. 138; Curtis v. Dade County Security Co. (C. C. A.) 30 F.(2d) 325; In re Guaranty Building & Loan Ass'n (D. C.) 49 F.(2d) 776; In re Puget Sound Savings & Loan Ass'n (D. C.) 49 F.(2d) 922; Coltrane v. Blake (C. C. A.) 113 F. 785.

■ A shareholder may become a creditor of an association, as its failure to pay the matured value of his stock, or to permit its withdrawal when conditions are met, would

create a cause of action and a provable claim in case of bankruptcy.

Counsel, insisting upon an adjudication, contend that, since the assets of this association have been taken over by the corporation commissioner for the purpose of liquidation, it has been unable to provide a fund for the withdrawal of its stock and the shareholders are its creditors on the theory of an anticipatory breach of an executory contract, and cite in support of their view Wilson v. Continental Building & Loan Ass'n (C. C. A.) 232 F. 824, and In re Western States Building-Loan Ass'n (D. C.) 50' F. (2d) 632.

■ Where a promisor renounces a contract or becomes unable to perform it, the promisee may declare a breach and base an action thereon, if an unconditional right to recover flows from the breach, for the reason that each party has a right to keep the contract open as a subsisting, effective agreement. But the privilege of these shareholders to withdraw their stock is dependent upon the accumulation of a fund, and it is therefore doubtful whether they could effectively declare a breach of that feature of their contract unless it were shown that the fund was available.

■ Inability to perform an executory agreement, however, does not ipso facto constitute a breach, and it is not a breach unless it is treated by the adverse party as such. This is, in effect, the reasoning of Chief Justice Fuller, in Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 785, 44 L. Ed. 953, where he quotes approvingly from Johnstone v. Milling, L. R. 16 Q. B. Div. 467, as follows: "When one party assumes to renounce the contract, that is, by anticipation refuses to perform it, he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not, of course, amount to a rescission of the contract, because one party to a contract cannot by himself rescind it, but by wrongfully making such a renunciation of the contract he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect of such wrongful rescission. The other party may adopt such renunciation of the contract by so acting upon it as in effect to declare that he too treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation."

The court further quotes Lord Justice Bowen, as follows: "We have, therefore, to consider upon what principles and under what circumstances it must be held that a promisee, who finds himself confronted with a declaration of intention by the promisor not to carry out the contract when the time for performance arrives, may treat the contract as broken, and sue for the breach thereof. It would seem on principle that the declaration of such intention by the promisor is not in itself and unless acted on by the promisee a breach of the contract; and that it only becomes a breach when it is converted by force of what follows it into a wrongful renunciation of the contract. Its real operation appears to be to give the promisee the right of electing either to treat the declaration as brutum fulmen, and, holding fast to the contract, to wait till the time for its performance has arrived, or to act upon it and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. But such declaration only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect, it becomes a breach of contract, and he can recover upon it as such."

■ These conclusions have been followed by the courts of this country in later decisions, and their application here would mean that the right to declare a breach of the withdrawal contracts rests with the shareholders, and cannot be exercised by these petitioning creditors; nor can the election be made by the association. Until the shareholders have signified by some act a purpose to rescind their contracts, they cannot be considered as creditors of this association.

In Wilson v. Continental Building & Loan Association, supra, the Court of Appeals of this circuit held that a shareholder was entitled to vote at the meeting of the creditors of a bankrupt estate. The shareholder made a claim against the association and insisted upon his right to vote, thereby exercising his option to become its creditor.

In Re Western States Building-Loan Ass'n, supra, three shareholders filed a petition to have an association adjudicated a bankrupt, and set forth therein the nature of their claims. A motion was made to dismiss the petition on the ground that the petitioners were not shown to be creditors holding provable claims. The court held that they had a right to petition, as their alleged claims arose out of the withdrawal contract of the association. In that case it was conceded that the association was insolvent, and

that a receiver had been appointed and put in charge of the property; the sole question presented to the court being whether the shareholders were qualified petitioners. Plainly these shareholders exercised their optional rights.

It is urged that the appointment of a receiver by the state court, with the consent of the Guardian Building & Loan Association, amounted to an assignment of its assets regardless of the question of solvency. This contention is not in accord with the great weight of the authorities, which hold that, in order to come within the meaning of clause 5, paragraph (a), section 21 of 11 USCA, section 3a(5), of the Bankruptcy Act as amended in 1926, it is necessary that the appointment of a receiver be made because of the debtor's insolvency, and that insolvency of a bankrupt corporation is a prerequisite to an adjudication in bankruptcy. United States v. State of Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; In re Spalding (C. C. A.) 139 F. 244; In re Sedalia Farmers' Co-op. Packing & Produce Co. (D. C.) 268 F. 898; In re Boston & Oaxaca Mining Co. (D. C.) 181 F. 422; In re Edward Ellsworth Co. (D. C.) 173 F. 699; In re Gold Run Mining & Tunnel Co. (D. C.) 200 F. 162.

The motion to strike will be sustained.