**BRANDEIS MACHINERY & SUPPLY CORP. and State Equipment Company, Plaintiffs-Appellees,**

v.

**BARBER–GREENE COMPANY, Defendant-Appellant.**

No. 73–2058.

United States Court of Appeals, Sixth Circuit.

Argued April 4, 1974.

Decided Sept. 24, 1974.

William C. Murphy, Aurora, Ill., for defendant-appellant; Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill., Stites, McElwain & Fowler, Louisville, Ky., on brief; Lambert M. Ochsenschlager, Timothy J. Reuland, Aurora, Ill., T. Kennedy Helm, Jr., Louisville, Ky., of counsel.

Wesley P. Adams, Jr., Louisville, Ky., for plaintiffs-appellees; Bruce L. Montgomery, Tom Scheuneman, Washington, D. C., on brief; Arnold & Porter, Washington, D. C., Ogden, Robertson & Marshall, Louisville, Ky., of counsel.

Before CELEBREZZE, McCREE and ENGEL, Circuit Judges.

PER CURIAM.

This appeal pursuant to 28 U.S.C. § 1292(a)(1) is taken by defendant Barber-Greene Company from the issuance of a preliminary injunction preventing it from terminating a fifty year distributorship and refusing to sell its asphalt products to plaintiffs Brandeis Machinery and Supply Company and its affiliate State Equipment Company.

The preliminary injunction was issued in a suit brought by Brandeis and State against Barber-Greene alleging that the latter had participated in an illegal tying arrangement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.

The Supreme Court has defined tying arrangement as:

"[A]n agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1957).

According to plaintiff-appellees, the illegal conduct claimed here arose when Barber-Greene refused to continue to sell Brandeis its dominant asphalt products line (the tying product) unless Brandeis agreed to distribute exclusively Barber-Greene's less popular Telsmith line of stone-crushing equipment (the tied product). When Brandeis, a multi-products distributor who had handled the Telsmith line for Barber-Greene since 1964, chose to take on the distributorship of Rexnord products, a line of stone-crushing equipment competitive with Telsmith, Barber-Greene terminated its entire dealer agreement with Brandeis and State.

Barber-Greene's principal challenge on appeal is to the district court's determination that Brandeis had shown sufficient likelihood of ultimate success on the merits to warrant the issuance of the preliminary injunction. Barber-Greene relies upon the right of termination reserved to it in its agreements with appellees, and claims that it engaged in no more than a simple refusal to deal, held not actionable in United States v. Colgate, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Brandeis, on the other hand, relies upon that line of more recent cases which hold the Colgate doctrine not to be applicable where the manufacturer's actions "go beyond mere announcement of his policy and the simple refusal to deal, and he employs other means to effect adherence" to his demands. United States v. Parke, Davis & Co., 362 U.S. 29, 44, 80 S.Ct. 503, 512, 4 L.Ed.2d 505 (1960). See also Federal Trade Commission v. Beech-Nut Packing Company, 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (1921); Osborn v. Sinclair Refining Company, 324 F.2d 566 (4th Cir. 1963).

Before reaching a decision to grant preliminary injunctive relief, the district judge heard three days of testimony, and in addition considered numerous depositions and received 47 exhibits. That record has been reduced on appeal to an appendix consisting of three volumes and over one thousand pages.

■ In determining whether sufficient likelihood of success exists as one of the necessary conditions to preliminary injunctive relief, the trial court was required to "satisfy itself, not that the plaintiff certainly has a right, but that he has a fair question to raise as to the existence of such a right." American Federation of Musicians v. Stein, 213 F.2d 679, 683 (6th Cir. 1954), cert. denied, 348 U.S. 873, 75 S.Ct. 108, 99 L.

Ed. 687 (1954). Similarly in an antitrust action, Judge Jerome Frank held that:

"[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for mere deliberate investigation." Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2nd Cir. 1953).

■■ Our function on appeal is to make a careful examination of the record to satisfy ourselves that the findings of the trial judge are not clearly erroneous, and that he has not abused the broad discretion which is his in determining whether to grant or withhold interlocutory relief. Com-Share, Inc. v. Computer Complex, Inc., 458 F.2d 1341 (6th Cir. 1972). We believe it is important that we refrain from unnecessary comment on the evidence, in recognition of the fact that the case is yet to be heard in full on its merits.

"Ordinarily, an appellate court, upon an appeal from an order granting or denying a temporary injunction, will not go into the merits of a case further than is necessary to determine whether the trial court exceeded a reasonable discretion in making the order, and this is especially true where the rights of the parties can be better determined upon full proof of the facts." American Federation of Musicians v. Stein, *supra*, 213 F.2d at 683.

■ Upon a careful review of the record, we conclude that the findings of the trial court are not clearly erroneous, and that it did not abuse its discretion in granting the preliminary injunction.

Affirmed. Costs to appellees.