**MLZ, INC., et al., Plaintiffs and Defendants-By-Counterclaim,**

v.

**FOURCO GLASS COMPANY et al., Defendants and Plaintiffs-By-Counterclaim.**

**FOURCO GLASS COMPANY et al., Third-Party Plaintiffs,**

v.

**Leo ZUCKERBERG et al., Third-Party Defendants.**

No. CIV–2–78–89.

United States District Court, E. D. Tennessee, Northeastern Division.

July 21, 1978.

274

E. Cooke Rand and Michael R. Sonberg, New York City, and N. R. Coleman, Jr., Milligan, Coleman, Fletcher, Gaby & Kilday, Greeneville, Tenn., for plaintiffs and defendants-by-counterclaim.

Edwin O. Norris, Hunter, Smith, Davis, Norris, Treadway & Hadden, William T. Gamble, Wilson Worley, Gamble & Ward, Kingsport, Tenn., and Judith S. Kaye, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendants and plaintiffs-by-counterclaim.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is one of several actions pending in this Court, emanating from the respective efforts of the plaintiff MLZ, Inc. (MLZ) and the defendant Fourco Glass Company (Fourco) to acquire a controlling interest in the defendant ASG Industries, Inc. (ASG) through the purchase of shares of its common stock. The Court's jurisdiction was invoked under the Securities Exchange Act of 1934, § 27, 15 U.S.C. § 78aa, and the federal question statute, 28 U.S.C. § 1331. The plaintiff sought also to have this Court accept pendent jurisdiction over certain claims arising under state law.

■ The plaintiff applied for a temporary restraining order. Rule 65(b), Federal Rules of Civil Procedure. That rule, by its terms, relates only to restraints sought " * * * without written or oral notice to the adverse party or his attorney. * * *" Here, the adverse party had notice and, in fact, was present at and participated in the hearing thereupon on July 17, 1978; accordingly, the Court treated the application as one for a preliminary injunction. *Wisch v. Sanford School, Inc.*, D.C.Del. (1976), 420 F.Supp. 1310, 1311, citing 11 Wright & Miller Federal Practice and Procedure § 2951.

MLZ and Fourco, each, made an offer to purchase ASG common stock from its shareholders. Subsequently, these offers were supplemented on several occasions in manners to increase the proposed purchase price, each side trying to effectively "outbid" the other. The management of ASG endorsed unanimously Fourco's offer and also sought, through legal proceedings in this Court and elsewhere and by other means, to defeat the MLZ offer.

This action was commenced in the Southern District of New York on June 1, 1978. It is the primary contention of MLZ that the Fourco offer does not contain the information required by the rules of the Securities and Exchange Commission, particularly 17 C.F.R. § 240.14d–100 (Rule 14d–100), and that accordingly such offer is in violation of the so-called Williams Act, 15 U.S.C. § 78n(e).*

Several motions were filed in the Southern District of New York. After conducting a hearing on June 7 and 8, 1978, Honorable Charles L. Brieant, judge, rendered a bench opinion, finding that " * * * time is of the essence * * *" herein. He also noted the necessity that the competing tender offers herein be " * * * proceed[ed] with rapidly and that any disputes which arise be adjudicated promptly so that if there is a deficiency or a mistake or an incomplete statement in any [offering] material, that can be corrected and the persons to whom the offer[s] are being made can be correctly informed and given the opportunity, if necessary, to withdraw their tendered stock if the change in the materials motivates them to do so. * * *" After indicating that he felt the Southern District of New York was not the most convenient venue for this action, Judge Brieant stated his view that:

\* \* \* \* \* \*

* * * [I]t is appropriate that the taking down of the tendered stock be prevented until such time as the litigants can apply for that type of preliminary relief in either Delaware or Tennessee or in both places, in the federal courts in those jurisdictions, and I am prepared to issue a ten day restraining order unless earlier otherwise directed, by one or both of the courts which had the prior dealings with this subject matter, that both the competing tendering groups will be restrained from purchasing, transferring or making payment for or otherwise alienating any shares or any interest therein

* " * * * It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer * * *. The [Securities and Exchange] Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent such acts and practices as are fraudulent, deceptive or manipulative. * * *" 15 U.S.C. § 78n(e).

which has been or may now hereafter be tendered to either of such competing groups.

\* \* \* \* \* \*

That stay will last for ten days unless the courts in which the earlier litigation was initiated, one or both of them, otherwise earlier directs, and that will give you time to go down either to Delaware or to Tennessee or both places and make that request.

\* \* \* \* \* \*

This action was transferred to this Court on June 12, 1978. 28 U.S.C. § 1404(a). However, despite Judge Brieant's strong suggestion that the parties proceed to seek any desired preliminary relief in this Court forthwith, and, despite the obvious necessity of doing so in view of the rapidly approaching expiration date of the competing tender offers, neither side sought any relief in this Court in a timely fashion. The final tender offers, each, was scheduled to expire at 6:00 o'clock, p. m., Friday, June 19, 1978 (although this period was extended for one more day). Fourco was offering $5.00 per share; MLZ offered $5.50. By the close of business on June 19, MLZ had lost the tender-offer battle in an overwhelming fashion, despite its higher offering price. Accordingly, on the following day its offer was terminated.

■ The granting of preliminary injunctive relief pending final decision on the merits is a matter committed to the sound discretion of the trial court. *Com-Share, Inc. v. Computer Complex, Inc.,* C.A. 6th (1972), 458 F.2d 1341, 1342[1]. Such relief is equitable in nature, and the Court's exercise of its discretion is to be guided by the general historical principles of equity. *Meredith v. Winter Haven* (1943), 320 U.S. 228, 235, 64 S.Ct. 7, 11, 88 L.Ed. 9, 13 (headnote 4); see also *Hecht Company v. Bowles* (1944), 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

■ It is a well established principle that equity aids only the vigilant, and such relief is confined to those who exercise reasonable diligence in seeking the same, and it will be denied to those who sleep upon their rights. 27 Am.Jur.(2d) 658, Equity § 130; 42 Am. Jur.(2d) 805, Injunctions § 61. " \* \* \* Courts of equity frequently decline to interfere on behalf of a complainant whose attitude is unconscientious in respect of the matter concerning which it seeks relief. \* \* \* " *National Fire Ins. Co. v. Thompson* (1930), 281 U.S. 331, 338, 50 S.Ct. 288, 291, 74 L.Ed. 881, 886 (headnote 2).

■ The plaintiffs do not offer an acceptable explanation of the reason(s) they waited to seek preventive injunctive relief from this Court until after they had already lost in the marketplace. Had they sought such preliminary relief prior to the time the respective offers had terminated, this Court could easily have issued an order to maintain the status quo until the legality of Fourco's offering papers could be adjudicated. Time was absolutely of the essence herein; yet, the plaintiffs apparently elected to take their chances in the marketplace with their higher tender offer. In its latest brief, MLZ states that:

\* \* \* \* \* \*

\* \* \* MLZ determined that, with a higher offer, it had an opportunity to succeed in the marketplace despite the illegality of the Fourco Offer and that it would not attempt to obtain injunctive relief in the one week remaining before closing. Obviously, had the MLZ Offer succeeded, the need for judicial relief would have been obviated. [Footnote reference omitted].

\* \* \* \* \* \*

Thus, it is clear that MLZ took deliberately the calculated risk that it would prevail in the marketplace. It lost and now seeks to invoke the equitable powers of this Court to "undo" what it easily could have prevented, were it not for its considered choice to the contrary.

Under the circumstances that were presented, it was of absolute necessity that prompt action be taken by MLZ, so that any deficiency in Fourco's offer could be corrected immediately so as to give the ASG shareholders the correct information upon

which to base their decision. However, the ASG investors had already made their choice long before MLZ filed its motion herein of July 5, 1978, seeking from this Court a temporary restraining order.

In corporate-control contests, the stage of preliminary relief, rather than post-contest lawsuits is the time when judicial relief can best be given. *Piper v. Chris-Craft Industries* (1977), 430 U.S. 1, 42, 97 S.Ct. 926, 949, 51 L.Ed.2d 124, 153, rehearing denied (1977), 430 U.S. 976, 97 S.Ct. 1668, 52 L.Ed.2d 371. This is so because " * * * prior to consummation of the offer the court still has a variety of methods available to it for correction of the misstatements or omissions. But once the tender offer has become consummated it becomes difficult, and sometimes virtually impossible for a court to 'unscramble the eggs.' * * * " *Sonesta Int'l Hotels Corp. v. Wellington Associates*, C.A.2d (1973), 483 F.2d 247, 250.

The Court hereby FINDS, for present purposes only, that the plaintiffs were guilty of unreasonable delay in failing to seek injunctive relief in this Court until after they had been defeated in the marketplace. It is therefore CONCLUDED that, to grant the plaintiffs the injunctive relief which they now seek, would be inequitable under the circumstances and would constitute an unjustifiable intrusion by this Court into the corporate affairs of ASG and the market decisions already made by its shareholders.

■ The burden rested upon the plaintiffs to have demonstrated their right to the injunctive relief sought herein. See *Garlock, Inc. v. United Seal Incorporated*, C.A. 6th (1968), 404 F.2d 256, 257[1]. A plaintiff, seeking a preliminary injunction in this circuit, must demonstrate a strong or substantial likelihood or probability of success on the merits; in addition, irreparable injury must be shown; it must be demonstrated that the issuance of a preliminary injunction will not cause substantial harm to others; and it must be found that the public interest will be served by its issuance. *Mason County Medical Ass'n v. Knebel*, C.A. 6th (1977), 563 F.2d 256,

261[3]; see also *Ohio Contractors Ass'n v. EDA*, C.A. 6th (1978), 580 F.2d 213.

■ The sole purpose of the Williams Act, *supra*, on which the plaintiffs rely, is " * * * the protection of investors who are confronted with a tender offer. * * * " *Piper v. Chris-Craft Industries, Inc., supra*, 430 U.S. at 35, 97 S.Ct. at 946, 51 L.Ed.2d at 149[6]. Its aim is " * * * to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the offering party * * * [that is,] * * * to solve the dilemma of shareholders desiring to respond to a cash tender offer. * * * " *Rondeau v. Mosinee Paper Corp.* (1975), 422 U.S. 49, 58, 60, 95 S.Ct. 2069, 2075–2076, 45 L.Ed.2d 12, 20, 21. The legislative history of the enactment shows " * * * [t]hat tender offerors were not the intended beneficiaries of the bill. * * * " *Piper v. Chris-Craft Industries, Inc., supra*, 430 U.S. at 28, 97 S.Ct. at 942, 51 L.Ed.2d at 145.

■ This Court finds nothing in this record indicating that ASG's shareholders feel that they did not have adequate information upon which to base their decision regarding Fourco's tender-offer. Neither they, nor the target company, are complaining about that offer. Nor does the record herein indicate that, had the Fourco offer been cured of its alleged deficiencies, any shareholder would have decided other than he, she, or it did when faced with the two competing tender offers. The plaintiffs, thus, have failed to show a strong or substantial likelihood or probability of success on the merits.

The plaintiffs' calculated delay in seeking injunctive relief from this Court until after the competing tender offers terminated is not indicative of their present claim of irreparable injury. The Court notices further the substantial harm which would result to the innocent shareholders who tendered their stock pursuant to the Fourco offer should the requested injunction issue. *Inter alia*, the plaintiffs ask this Court to

278

restrain the defendants from purchasing or making payment for any shares already tendered. This would effectively deprive the tendering ASG stockholders of their stock as well as the proceeds thereof. Such a result would be inequitable. As demonstrated from the affidavit of Mr. F. M. Hernan, ASG and its personnel would also be harmed by such an injunction.

■ Under all these circumstances, the public interest would not be served by granting the requested relief. " * * * [T]he principles of equity * * * militate heavily against the grant of an injunction except in the most extraordinary circumstances. * * * " *Rizzo v. Goode* (1976), 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561, 574[8]. There is no power the exercise of which is more delicate, requires greater caution, deliberation, and sound discretion, or is more dangerous in a doubtful case, than the issuing of an injunction. *Detroit News. Pub. Ass'n v. Detroit Typo. Un. No. 18, Etc.*, C.A. 6th (1972), 471 F.2d 872, 876[4], certiorari denied (1973), 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687. Such relief is the strong arm of equity and ought not to be extended except to cases of great injury; the right thereto must be clear and injury impending or threatened, so as to be averted only by the protecting preventive process of injunction. *Ibid.*, 471 F.2d at 876[5], [7].

It results that the application of the plaintiffs herein for a preliminary injunction hereby is

DENIED.